**SLATER AND ROGERS, INC., a corporation of the State of Delaware, Plaintiff,**

v.

**GEORGE B. CLARKE & SONS, INC., a foreign corporation, Defendant.**

Civ. A. No. 2061.

United States District Court
D. Delaware.

Aug. 26, 1960.

Jackson W. Raysor of Tunnell & Raysor, Georgetown, Del., for plaintiff.

William Prickett, Jr., of Prickett & Prickett, Wilmington, Del., for defendant.

LAYTON, District Judge.

The dispute here arises out of facts described in Civil Action No. 2113. D. C., 186 F.Supp. 814. In addition to the controversy there decided, the parties entered into other undertakings out of which have grown disputes involving in the main (1) alleged damages to a Bucyrus crane rented by Slater to the defendant, and (2) the daily rental figure.

Other minor disputes involving the taking over by Slater of a road maintenance contract and rental for a flat bed trailer have now been resolved.

(a) It is agreed, and I find, that the sum of $1,368.15 is due Slater representing the balance due on the road maintenance contract and for the rental of a flat bed trailer.

▆ (b) The next controversy is the correct rental figure for the Bucyrus crane. The defendant says it was $65 per day. Slater claims it was $70 per day. It is undisputed that an average per diem rental figure for such a piece of machinery is about $140 per day. It is obvious, therefore, that Slater set a very much lower figure in the light of the then friendly negotiations leading toward an amalgamation of the two companies. But it seems to me more than likely that the normal thing to do would be to set half the going rate rather than a figure $5 under it. Moreover, I could not accept at face value some of the testimony of the Clarkes in Civil Action No. 2113 which necessarily affects the weight of their testimony here. Accordingly, I find that the agreed per diem rental figure was $70 per day leaving a balance due in this respect of $265.

The greatest controversy surrounds Slater's claim for damages to the Bucyrus crane while it was rented to the defendant in Long Island. The crane was bought new in 1951 by the duPont Company for $32,000 and was in excellant condition in 1954 when purchased by Slater for $14,000. During the negotiations between the parties concerning the purchase of the Slater stock (C.A. No. 2113), Slater agreed to rent it to the defendant.

Slater claims that the crane was in good condition when delivered to the defendant in Long Island and that it was badly damaged during the time it was there. In support of this claim, he has produced witnesses employed by reliable companies who have given estimates indicating that the total cost for repairs, parts and labor to put the crane back in good condition would be $6,553.33, and the cost of repairing the motor would be $1,166.

The Clarkes tell a different story. According to them, the crane was in very bad condition when received by them and no worse when returned.

The evidence is flatly in conflict and the difficulty in resolving it almost impossible. As in most cases of this sort, it is probable that upon its arrival in Long Island the crane was in worse condition than Slater thought and somewhat better than Dekoning stated. A careful examination of the defendant's testimony, however, reveals substantial flaws and inconsistencies. Dekoning, defendant's operator, testified that when the crane was delivered to Long Island, it was in such bad condition that it took him and an assistant a week to repair it. But in almost every instance the items listed by him as being in need of repair were different from the ones specified by Slater as needing repair upon the crane's return. The logical conclusion is that the crane was in poor condition when it arrived in Long Island but that all necessary repairs were made and the failure to mention the damages listed by Slater on its return was because these damages occurred during the operation of the crane in Long Island. Tending to support this conclusion is the fact that Dekoning admitted operating the crane in a fashion which could well have damaged it when, by spending a couple of hours shifting a counter weight, this would not have happened.

It is my conclusion that Slater has proved by a preponderance of the evidence that the damages to the crane were incurred through the defendant's operation thereof.

As to the amount of damages, Slater produced representatives from two reliable firms, Giles & Ransome, and Manlove Automotive Service, Inc., who itemized the necessary repairs both to the crane and motor together with the cost thereof. In the case of the crane, the cost of restoring it to good order was $6,553.33 and the motor $1,166. Except for inferences finding no substantial support in the record, there is not an iota of evidence to refute these two estimates.

It necessarily follows that the plaintiff has made good his case. The plaintiff is entitled to judgment as follows:

| | |
|---|---|
| Balance due on rent of crane | $ 265.00 |
| Road contract and flat bed trailer | 1368.15 |
| Damage to crane | 6553.33 |
| Damage to motor | 1166.00 |
| | $9352.48 |

Let an order be entered in accordance herewith.